09CV1249
JUDGE KENNELLY
MAGISTRATE JUDGE SCHENKIER
BR

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

(8/01/08) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, Law DIVISION

Bryan Pease and Catherine Rogers

(Name all parties)

v.

ALISON TRUE; STEVEN TIMBLE; the CHICAGO READER, INC.; RICHARD BERMAN; DAVID MARTOSKO; the CENTER FOR CONSUMER FREEDOM; BERMAN AND COMPANY, INC.; SHON RAHRIG; and DOES 1-100,

No. 2009L000771
CALENDAR/ROOM B
TIME 00:00
Libel/Slander

## SUMMONS

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 801, Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 99500
Name: Bryan Pease and Catherine Rogers
Atty. for: in pro per
Address: 302 Washington Street, #404
City/State/Zip: San Diego CA 92103
Telephone: (619) 723-0369

WITNESS: DOROTHY BROWN JAN 22 2009

Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code) (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, IL

**EXHIBIT A**

## Service List

Alison True
11 East Illinois Street
Chicago, IL 60611

Steven Timble
11 East Illinois Street
Chicago, IL 60611

The Chicago Reader, Inc.
11 East Illinois Street
Chicago, IL 60611

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

COUNTY DEPARTMENT, LAW DIVISION

2009L000771
CALENDAR/ROOM B
TIME 00:00
Libel/Slander

| BRYAN PEASE and<br>CATHERINE ROGERS,<br><br>Plaintiffs,<br><br>vs.<br><br>ALISON TRUE; STEVEN TIMBLE; the<br>CHICAGO READER, INC.; RICHARD<br>BERMAN; DAVID MARTOSKO; the<br>CENTER FOR CONSUMER FREEDOM;<br>BERMAN AND COMPANY, INC.; SHON<br>RAHRIG; and DOES 1-100,<br><br>Defendants. | ) No.<br>)<br>) VERIFIED COMPLAINT FOR<br>) DEFAMATION, INVASION OF PRIVACY<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
|---|---|

[FILED stamp: 09 JAN 22 PM 2:09, DOROTHY BROWN, CLERK, CIRCUIT COURT OF COOK COUNTY ILLINOIS, LAW DIVISION]

Plaintiff alleges:

1. Jurisdiction and venue are proper because the acts or omissions complained of occurred in Cook County, Illinois, and defendants' actions, and each of them, were calculated to harm plaintiffs in Cook County, Illinois.

2. Plaintiff BRYAN PEASE is an attorney who resides and practices in San Diego, California and is and at all relevant times mentioned in this Complaint was a co-founder and an unpaid director of the Animal Protection & Rescue League ("APRL"), a nonprofit corporation organized and existing under the laws of California.

3. Plaintiff CATHERINE ROGERS is and at all times mentioned in this Complaint was an individual who is from Chicago, now residing in California, who is a co-founder of and volunteer for APRL.

Verified Complaint - 1

4. Defendant ALISON TRUE is, and at all times mentioned in this Complaint was, an individual residing in Chicago, Illinois and the Editor of the Chicago Reader.

5. Defendant STEVEN TIMBLE is, and at all times mentioned in this Complaint was, an individual residing in Chicago, Illinois and the Associate Publisher of the Chicago Reader.

6. Defendant CHICAGO READER is, and at all times mentioned in this Complaint was, a corporation organized and existing under the laws of Illinois.

7. On information or belief, defendant SHON RAHRIG is, and at all times mentioned in this Complaint was, a convicted animal abuser last known to be residing in or around Los Angeles, CA.

8. Defendant DAVID MARTOSKO ("MARTOSKO") is, and at all times mentioned in this Complaint was, an individual employed in Washington, DC.

9. Defendant RICHARD BERMAN is, and at all times mentioned in this Complaint was, an individual who is employed in Washington, DC.

10. Defendant CENTER FOR CONSUMER FREEDOM ("CCF") is, and at all times mentioned in this Complaint was, a corporation based in Washington, DC.

11. Defendant BERMAN AND COMPANY ("BCI") is, and at all times mentioned in this Complaint was, a corporation based in Washington, DC.

12. The true names and capacities of the Doe Defendants 1 through 100 are unknown, and Plaintiffs will seek leave of court to amend its complaint to allege such names and capacities as soon as they are ascertained. All allegations concerning any defendant named herein are also hereby alleged against any such fictitiously named Doe Defendant.

13. Plaintiffs are informed and believe and thereon allege that each defendant designated herein by fictitious name is legally responsible for, has proximately caused the happening set forth in this complaint and/or is obligated to indemnify and hold harmless defendants in any and all respects as hereinafter alleged. At all times herein alleged, such defendants, and each of them, were the agents or employees of all other defendants, and in doing the acts herein alleged were acting within the scope of that authority as such agent or employee.

14. Plaintiffs respectfully request that this Court allow attorney/plaintiff Bryan Pease to appear pro hac vice to represent his wife, plaintiff Catherine Rogers. Illinois Supreme Court Rule 707 provides:

Anything in these rules to the contrary notwithstanding, an attorney and counselor-at-law from any other jurisdiction in the United States, or foreign country, may in the discretion of any court of this State be permitted to participate before the court in the trial or argument of any particular cause in which, for the time being, he or she is employed.

## FIRST CAUSE OF ACTION
[Defamation per se by defendants RAHRIG, TRUE, TIMBLE, and the CHICAGO READER committed against both plaintiffs]

15. Paragraphs 1-14 are re-alleged and incorporated herein by reference.

16. On information or belief, at all times mentioned in this complaint, all defendants were and are aware that plaintiff BRYAN PEASE is pursuing a career in law.

17. On January 26, 2008, defendant RAHRIG posted the following on the Chicago Reader's blog (http://blogs.chicagoreader.com/food/2007/03/02/theres-no-ban-slapp-suits/):

MissionHillsWhiteKnight
January 26th - 7:09 p.m.
Bryan Pease - California Attorney tells lies for donations
– Animal Rights fanatic now poisoning the wells of Justice.
To a citizen Shon Rahrig in which he never knew or had any previous legal relationship with...

Verified Complaint - 3

Bryan Pease and wife Kath Rogers lied to the media based upon false information to benefit their donation group. They called the local news and passed flyers around the beach to promote her and her Husband Brian Pease's company.
The flyers they passed out to the public falsely indicated
1. That Shon Rahrig poked out both eyes of the cat and broke the limbs. The cat had one eye injury, its eye was not poked out and there was one broken leg. Of course this wouldn't get as many donations would it?
2. That Shon Rahrig adopts pets with the intent to torture. An allegation in which he had absolutely no proof of and according to a background check Rahrig has no charges since 1999. In fact, Bryan Pease being an attorney could have checked documents available from the court in which state that Rahrig did either "knowingly or unnecessarily," injured the cat. It did not use the language "torture" in any way. This was a word Kath Rogers and Bryan Pease concocted.
Kath Rogers passed out flyers trying to get sympathy from Californians on the beach and then trying to get publicity for her and her husbands company www.aprl.com They didn't realize there are intelligent people here and her promotion received confirmation that their point of view was an issue they were taking too far after 7 years. After all, after their company receives donations to pay their salaries, so truth was probably not an issue for them as they could have verified what was true through official public records, rather than a Google search.
Brian Pease is president of www.aprl.com. His wife is Kath Rogers listed above also of www.aprl.com He advertises as a freedom of speech attorney. It appears in this case as if we have a California Attorney chasing around a citizen of the United States in a scheme that any normal person would construe as harrassment. We did a little "Google" research on Brian Pease. We find it surprising for someone working in a profession with such high ethical standards to be involved with this. If citizens find out what he did, I think it in good taste to request the bar revoke his California License privileges.
Reference
http://www.foxnews.com/story/0,2933,47951,00.html
http://www.activistcash.com/biography.cfm/bid/3247...
http://blogs.chicagoreader.com/food/2007/03/02/the...
The defamation campaign against Shon Rahrig initiated through collating false information, having an email message perpetuate animal groups around the country and posting over and over the same message 800-1000 times, sometimes phrased slightly differently on many sites with links back to the site where a person could donate money for the cause. A campaign of lies then started and each time they were generated they became a little more horrendous. The first lie originated when it was posted on a site that Shon Rahrig had tried to adopt another pet through a Pets Mart on Sawmill Rd. in Columbus. Of course he wasn't even in town at the time or anywhere near a Pets Mart. (Later we found proof that Mary Poliseno was involved with her organization at this location) His probation department was called with a person trying to perpetuate a lie in which at the time they called Rahrig to investigate. Shon Rahrig was in California at the time and had been there for some time.
The lies would continue to grow and eventually several groups signed on to Mary's campaign and perpetuated further lies around the Internet. The truth was not enough to get donations, so they lied and deceived people. These new sites would contain donation

Verified Complaint - 4

links in which the site promoted people giving money for its cause. This is why the lies were started, so that un-knowing grandmothers and animal lovers would take money out of their pockets to support these individuals' expenses under the cover of non-profit organizations.
Read full story at www.knightsofliberty.com/shonrahrigdonationscam.ht...

18. The above comments are defamatory per se because they accuse plaintiffs of lying to the media to benefit themselves financially. In fact, donations to APRL do not benefit plaintiffs personally, and plaintiffs provided only truthful information to the media about defendant RAHRIG's criminal convictions and jail sentence for torturing dogs and cats in Ohio, followed by his attempts to adopt more animals he could torture.

19. When brought to the attention of TRUE and TIMBLE, these individuals refused to remove the defamatory posting. This was despite the fact that the CHICAGO READER's high ranking in search engines was and is causing a search for "Kath Rogers" (Catherine's nickname) to result in the following summary coming up first:

Chicago Reader Blogs: The Food Chain
Mar 2, 2007 ... **Bryan Pease and wife Kath Rogers lied to the media based upon false** ...
His wife is Kath Rogers listed above also of www.aprl.com He ...
blogs.chicagoreader.com/food/2007/03/02/theres-no-ban-slapp-suits/ - 37k - Cached –

20. The CHICAGO READER did remove later defamatory posts directed at defendant TRUE, thus taking an active role in determining which posts should remain and which should not, and specifically choosing to allow the above post to remain concerning plaintiffs.

21. Defendant TRUE has refused to even speak with plaintiffs about this issue. Plaintiff PEASE has spent several hours meeting in person and speaking on the phone with defendant TIMBLE, attempting to contact defendant TRUE, and speaking to an attorney for the CHICAGO READER, all to no avail.

## SECOND CAUSE OF ACTION
[Invasion of Privacy committed by defendants BERMAN, MARTOSKO, CCF AND BCI ("CCF Defendants") against plaintiff PEASE]

22. Paragraphs 1-21 are re-alleged and incorporated herein by reference.

23. On information or belief, CCF was formerly known as the Guest Choice Network and was founded with a $600,000 grant from tobacco company Phillip Morris. BERMAN founded CCF and serves as a director, its president and executive director and is the only individual with signatory power over CCF funds. BERMAN is also the president and sole owner of BERMAN AND COMPANY, INC. ("BCI").

24. On information or belief, BERMAN runs both CCF and BCI out of the same office. BERMAN arranges for large tax-deductible corporate donations to be made to CCF, which he directs. He then hires his own for-profit company, BCI, to conduct research, lobbying and consulting to benefit the interests of these corporations.

25. On information or belief, rather than hire its own employees, CCF pays BCI to conduct research and lobbying activities. The formula CCF uses to pay BCI uses the accounting practice known as the "Rule of 3," wherein the employee's hourly rate is multiplied by three and paid to BCI. One third of the amount is paid to the BCI employee, one third to BCI's overhead, and one third is for BCI's profit. This scheme enables non-profit funds to be used to generate a profit for BERMAN. Instead of CCF hiring employees at the market rate, it pays at least a third more to BCI to use its employees.

26. On information or belief, defendants MARTOSKO, BERMAN, CCF and BCI actively solicit clients and corporate donors in Illinois, and they actively lobby in Illinois on Illinois issues.

27. In a 1999 interview with the *Chain Leader*, a trade publication for restaurant chains, BERMAN explained the focus of his lobbying. "We always have a knife in our teeth," he said. Since activists "drive consumer behavior on meat, alcohol, fat, sugar, tobacco and caffeine," his strategy is "to shoot the messenger.... We've got to attack their credibility as spokespersons."

28. In a speech to the National Pork Forum in Dallas in May 2003, BERMAN said the way for businesses to win against activist groups pushing for changes to the meat industry was to wage hard counter campaigns "to de-legitimize them in the eyes of the public."

29. Throughout its history, CCF has paid large sums to BCI for what are described as "management services," including "research, communications and general and administrative services." The payments to BCI between only 2000-2002 total $1,791,582, or more than two thirds of the organization's total budget for the two year period.

30. In a job advertisement posted on November 27, 2002, CCF purportedly sought to hire a research assistant. However, the job description identified CCF not as a non-profit, but as an "[a]ggressive DC research and communications firm" and offered compensation "includ[ing a] profit sharing program," something strictly forbidden in the non-profit sector. Since CCF never had any employees, hired BCI to conduct all of its activities, and has no profits to share as a nonprofit corporation, it is obvious that BCI is the aggressive DC firm described and put forth as the alter ego of CCF in the job advertisement.

31. Defendants BERMAN, MARTOSKO, CCF and BCI ("CCF Defendants") launched a website called Activistcash.com in November 2001, which they describe as "a project of the Center for Consumer Freedom."

32. CCF Defendants state on their Activistcash.com website, "This site, a part of the ConsumerFreedom.com network, is committed to providing detailed and up-to-date information about the funding source of radical anti-consumer organizations and activists."

33. CCF Defendants promote Activistcash.com with sponsored advertising in search engines and through other paid advertisements in major print publications, on television and on billboards.

34. The intention of CCF Defendants is to make negative information about groups and individuals profiled on Activistcash.com appear when their names are typed into a search engine.

35. CCF Defendants list over 100 "key players" on Activistcash.com, who they describe as making up a "web of anti-consumer activism."

36. CCF Defendants list Plaintiff PEASE on Activistcash.com as one of the "key players" and have posted a page about Plaintiff PEASE on the website at http://www.activistcash.com/biography.cfm/bid/3247.

37. CCF Defendants use Internet "meta-tags" and other techniques to ensure that their "biography" of Plaintiff PEASE comes up first when Plaintiff's name is entered into all major search engines.

38. CCF Defendants' description of Plaintiff contains a link to "email this page to a friend," encouraging its broad dissemination.

39. On information and belief, CCF Defendants have disseminated their "biography" of Plaintiff to thousands of individuals around the world, including many in the State of Illinois.

40. When defendant RAHRIG posted the defamatory statements described in the first cause of action above, he also included a link to the CCF Defendants' "biography" of plaintiff PEASE. CCF Defendants actively encourage such broad dissemination, for instance including an "email to a friend" link on the page. It was reasonably foreseeable that CCF Defendants' "biography" of PEASE would be posted on a highly trafficked site such as the one maintained by the CHICAGO READER.

41. The most recent publication by CCF Defendants on their website describing plaintiff PEASE was in 2009, as indicated by the line appearing at the bottom, "Copyright © 2009 Center for Consumer Freedom. All rights reserved."

42. CCF Defendants also republished their website describing plaintiff PEASE on or about November 2008 with a new banner at the top reading, "Featured Activist Group: Center for Responsible Lending."

43. Acting with actual malice, CCF Defendants have repeatedly placed plaintiff PEASE in a false light before the public, which would be highly offensive to a reasonable person.

44. CCF Defendants continue to publish their "biography" of plaintiff PEASE, who is not a public figure, describing in a false and offensive light words or deeds plaintiff PEASE allegedly said or did in his teen years or early 20's as an animal rights activist.

45. The CCF Defendants' "biography" claims "Pease used a stun gun on the individual during an altercation." In fact, the weak electronic deterrent device used by plaintiff

PEASE to deter a drunk attacker who was harassing seals on a beach was not a "stun gun."

46. The CCF Defendants' "biography" claims plaintiff PEASE failed to appear in court on a certain occasion, when in fact he was not required to appear in court on that occasion and there was a clerical error.

47. The CCF Defendants' "biography" claims plaintiff PEASE illegally entered duck farms and committed burglaries by stealing ducks. In fact, while in law school, plaintiff PEASE launched an animal cruelty investigation of farms force feeding ducks massive quantities of food to produce "foie gras." Plaintiff videotaped workers doing this, and the workers did not tell him to leave. Plaintiff also rescued ducks that were on the verge of death from force feeding and brought them to a veterinarian. Plaintiff was never charged with violating any laws as a result of this activity, and a civil lawsuit filed by one of the farms was dropped.

48. The CCF Defendants' "biography" claims, "Bryan Pease has demonstrated his sympathy for violent groups like the FBI-designated 'terrorist' Animal Liberation Front (ALF) and Stop Huntingdon Animal Cruelty (SHAC)." In fact, plaintiff has neither sympathy for nor any affiliation with either of these groups.

49. The CCF Defendants' "biography" claims, "No Compromise, a magazine that openly supports ALF crimes and criminals, has acknowledged Pease as a financial donor." In fact, plaintiff has never contributed financially to No Compromise magazine.

50. The CCF Defendants' "biography" repeats allegations that have been proven false in court, that plaintiff PEASE allegedly kicked an employee of a company that was the target of a 2002 protest in Conway, Arkansas. Video footage proved that the protest was

nonviolent and plaintiff did not kick anybody. The "biography" states that plaintiff's 45 day jail sentence for trespass was reduced to 30 days but does not point out that the reduction was for saving the life of a jail employee, because the purpose of the "biography" is to portray plaintiff in as false a light as possible.

51. The CCF Defendants' "biography" states that plaintiff PEASE burned an effigy of a Cornell biomedical professor. However, the protest described, which was over ten years ago when plaintiff was 20 years old, was solely to call attention to false statements made by the head of animal usage at Cornell, and was nothing more than a nonviolent but flamboyant depiction of the phrase, "liar liar, pants on fire." The protest was not violent as implied by the false light CCF "biography."

52. The CCF Defendants' "biography" also attributes quotations to plaintiff PEASE out of context and in a false light.

53. As a result of the false light depictions, plaintiff PEASE has suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray judgment against Defendant as follows:

1. For general damages according to proof;
2. For exemplary or punitive damages in excess of $30,000;
3. For Plaintiffs' cost of suit herein;
4. For injunctive relief requiring Defendants, and each of them, to remove and not republish those statements that portray Plaintiffs in a defamatory or false light;
5. For such other and further relief as the Court may deem just and proper.

Dated: January 21, 2009

By: _____
Bryan Pease, Plaintiff pro per
and attorney for Catherine Rogers

## VERIFICATION

I, Bryan Pease, am a Plaintiff in the above-entitled action. I have read this complaint and know its contents. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

Dated: January 21, 2009
San Diego, CA

_____
BRYAN W. PEASE
Plaintiff pro per

302 Washington St. #404
San Diego, CA 92103
bryanpease@bryanpease.com
Ph.: 619-723-0369
Fax: 619-923-1001